UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------X
MARITZA BURGIE,

                     Plaintiff,            OPINION & ORDER

   -against-                   05 CV 968 (CPS) (KAM)

EURO BROKERS, INC. *et al.*,

                     Defendants.
----------------------------------------X

MATSUMOTO, United States Magistrate Judge:

       Euro Brokers, Inc. ("Euro Brokers") moves for
sanctions, pursuant to Rule 37(b) of the Federal Rules of Civil
Procedure, against plaintiff Maritza Burgie and her counsel Ruth
Pollack, Esq.  (See Doc. No. 20-1, Letter from Marjorie E.
Berman, dated Aug. 2, 2005.)  Euro Brokers seeks dismissal of the
action pursuant to Rule 37(b)(2)(c) or, alternatively, such order
as the Court deems just, for plaintiff's repeated violations of
Court orders and "failures to prosecute this action."  (Id. at
1.)  For the reasons that follow, the Court denies the motion in
part and grants the motion in part.  The Court orders that
plaintiff's counsel be sanctioned in the amount of $4,665.00,
representing a portion of the attorney's fees incurred by Euro
Brokers.  Plaintiff shall remit payment to Euro Brokers within
twenty-one days of the date of this Opinion and Order, or April
20, 2006.

## BACKGROUND

Plaintiff commenced this action on February 18, 2005, alleging that as a survivor of the September 11, 2001 attack on the World Trade Center, she suffers severe emotional and physical injuries due to her proximity to the attack.  Plaintiff asserts claims for wrongful termination pursuant to the Family Medical Leave Act, 29 U.S.C. § 2617 (a), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 *et seq*., against her former employer, defendant Euro Brokers, and seeks disability benefits pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*., under a disability plan issued by defendant First Unum Life Insurance Company.  (See Doc. No. 1, Complaint.)

### A.   *The Orders Giving Rise to the Sanctions Motion*

In its motion for sanctions, Euro Brokers identifies three Court orders with which plaintiff failed to comply: (1) the Court's Order Governing the Initial Conference, dated May 11, 2005, (2) the Court's order of June 16, 2005, and (3) the Court's order of June 28, 2005.

### 1.   *The Court's Order Governing the Initial Conference, Dated May 11, 2005*

On May 11, 2005, following the filing of the complaint, the Court issued a pretrial order, pursuant to Rules 16 and 26 of

the Federal Rules of Civil Procedure, scheduling an initial
conference on June 16, 2005 before the undersigned.  The order,
*inter alia*, directed that plaintiff confirm that defense counsel
were aware of the initial conference, and ordered that prior to
the initial conference, the parties exchange Rule 26(a)(1)
mandatory disclosures and confer regarding a discovery scheduling
plan and initial conference questionnaire.

By letter dated June 10, 2005, Marjorie Berman, Esq.,
counsel for Euro Brokers, informed the Court that she had
attempted to confer with plaintiff's counsel regarding a discovery
plan and mandatory disclosures, but had "been unsuccessful in
making contact with her," by email and telephone.  (Doc. No. 8.)
Counsel for Euro Brokers also reported that plaintiff's counsel
had not complied with the Court's order that plaintiff confirm
defense counsel's attendance at the June 14 initial conference,
and had not served an amended complaint by May 13, 2005, as
ordered on an endorsed letter by Judge Charles P. Sifton on April
26, 2005.  (See id.)


2.   **The Court's Order of June 16, 2005**

On June 16, 2005, plaintiff and Euro Brokers appeared by
their respective counsel for the initial scheduling conference.
Defendant First Unum did not appear, despite plaintiff's counsel's
representation that she had informed First Unum's counsel of the

3

conference.  At the initial conference, the Court ordered, *inter alia*, that the parties provide mandatory Rule 26(a) initial disclosures, and that plaintiff provide authorizations for medical, insurance and financial/employment records by June 24, 2005, and that the parties propound written discovery demands by July 5, 2005.  (Minute Entry of 6/16/06.)  In response to plaintiff's counsel's uncertainty as to when her client would be available to provide the disclosures and authorizations, the Court advised counsel that although the Court expected its orders to be followed, should she require more time, she should make a timely request for an extension showing why the extension was necessary.

By letter dated June 16, 2005, First Unum subsequently informed the Court that it had not been notified by plaintiff's counsel of the initial conference date and requested a telephone status conference with the Court.  (Doc. No. 10, Letter from Patrick Begos, Esq.)  Consequently, the Court scheduled a telephone status conference for June 28, 2005, with all counsel.

### 3.   *The Court's Order of June 28, 2005*

At the June 28, 2005 conference, plaintiff's counsel advised the Court that she still had not served plaintiff's Rule 26(a) disclosures or provided authorizations for medical, insurance and financial records, notwithstanding the Court's previous orders that plaintiff do so by June 24, 2005.  (<u>See</u> Doc.

4

No. 20, Letter from Marjorie E. Berman, at 2; Minute Entry of 6/28/05.)  The Court again reminded counsel that she should seek timely extensions of Court ordered dates, and granted plaintiff another extension – until July 8, 2005 – to serve Rule 26(a) disclosures and authorizations, as well as discovery demands, upon the representation of plaintiff's counsel that plaintiff and she could comply by that date.  (Minute Entry of 6/28/06.)

On August 2, 2005, defendant Euro Brokers made the instant motion for sanctions, nearly one month after plaintiff again failed to meet the third Court ordered deadline of July 8, 2005 to serve Rule 26(a) disclosures and provide authorizations.  Euro Brokers's application notes that plaintiff neither requested an extension of time, nor offered any explanation for the failure to comply with Court orders.  It is undisputed that Euro Brokers has complied with the Court's orders, including serving Rule 26(a) disclosures and discovery demands.  Euro Brokers seeks an order dismissing the action in its entirety pursuant to Fed. R. Civ. P. 37(b)(2)(C), or "such orders in regard to the failure as are just," pursuant to Fed. R. Civ. P. 37(b)(2).  (Doc. No. 20-1, Letter from Marjorie E. Berman, dated Aug. 2, 2005.)

B.   *The Order To Show Cause Why Sanctions Should Not Be Granted*

1.   *The Court's Order of August 2, 2005*

In response to the sanctions motion by Euro Brokers, on August 2, 2005, the Court ordered plaintiff and her counsel to show cause, in writing via ECF, on or before August 10, 2005, "why defendant's request for sanctions, pursuant to Fed. R. Civ. P. 37, should not be granted for plaintiff's repeated failures to comply with court orders or timely seek extensions of time.  Defendant shall file its reply, if any, on or before 8/17/05." (See Order dated Aug. 2, 2005.)

2.   *The Court's Order of August 5, 2005*

In response to a letter dated August 2, 2005 from plaintiff's counsel, requesting that her client's time to serve initial disclosures and discovery requests be extended to August 26, 2005 (Doc. No. 21), the Court entered an order on August 5, 2005, granting plaintiff a fourth date, until August 12, 2005, by which to provide Rule 26(a) disclosures and authorizations, and to propound discovery.  Plaintiff was advised that further extensions would not be granted and that if plaintiff failed to comply with the Court's extended date of August 12, the Court would recommend that plaintiff's action be dismissed, pursuant to Fed. R. Civ. P. 37 and 41(b).  The Court's August 5 order also reminded plaintiff

6

that, "as ordered on 8/2/05, she and her counsel are expected to
show cause by ECF, on or before 8/10/05, why defendant Euro
Brokers'[s] request for sanctions pursuant to Fed. R. Civ. P. 37
should not be granted.  The plaintiff and her counsel must explain
fully why they have failed to comply with this [C]ourt's orders .
. . ."  (Order dated Aug. 5, 2005.)


### 3.   *Plaintiff's Letter Dated August 11, 2005*

On August 10, 2005, plaintiff did not respond to the
Court's August 2, 2005 show cause order and did not seek an
extension of the show cause deadline.  By letter dated August 11,
2005, however, plaintiff's counsel claimed, among other things,
that an "all day" arbitration on August 10, 2005 precluded her
from speaking to her client and thus obtaining the information
needed for her show cause submission, and that she could not
electronically file a letter seeking an extension of time because
her "email did not function."  (Doc. No. 22.)  Plaintiff also
claimed that she could not "properly ECF [her] client's personal
and confidential medical records [on August 10, 2005] but would
have to deliver them to chambers to protect her privacy rights in
an effort to oppose the sanctions application."  (Id.) Plaintiff's
counsel further represented that she was prepared to deliver
plaintiff's Rule 26(a) disclosures to defendants the next day at
the show cause hearing, and that plaintiff would deliver the

medical authorizations to counsel's office the following Monday, August 15, 2005.  (<u>Id.</u>)

Plaintiff's August 11, 2005 letter also asserted several grounds for denying defendant's Rule 37 motion: (1) plaintiff is disabled and needs "a reasonable amount of additional time" to meet with her attorney "when she is medically capable," and when plaintiff's husband is available to assist and transport her; (2) plaintiff's injuries are "well documented" in the medical records and her attorney "took the case just before [counsel] became partially disabled with ovarian cancer"; (3) plaintiff suffers from "Major Depression, Post Traumatic Stress Disorder, heightened fears of terrorism since the war, sleeplessness, personality changes, skin rashes, weight gain, suicidal ideations and on and on"; (4) defendant Euro Brokers refused to cooperate with plaintiff prior to the commencement of this suit; and (5) sanctions are unwarranted at this stage because the case was commenced in 2005 and was "relatively new."  (<u>Id.</u> at 2-3.)

Plaintiff's counsel further offered to present testimony by her client at an evidentiary hearing.  Plaintiff's counsel also indicated that she would "discuss a conflict of interest issue" at the next conference with the Court.  (<u>Id.</u> at 3.)  Plaintiff enclosed copies of documents relating to her disability claim, and copies of what appear to be notes from her treating psychologist,

Dr. Maureen Kaley, dated between November 27, 2001 and September 2002.

### 4.    *The Show Cause Hearing*

Plaintiff did not appear for testimony at the show cause hearing on August 12, 2005, because she was out of town.  During the show causing hearing, the plaintiff's counsel provided Rule 26(a) disclosures to the defendants, but not the supporting documentation and the authorizations for medical, insurance, and financial/employment records that had been ordered previously. The Court, yet again, ordered plaintiff to provide documents necessary to complete plaintiff's Rule 26(a) disclosures and the authorizations by August 19, 2005, notwithstanding that they were ordered to have been provided months earlier and that multiple extensions had been granted already.  (<u>See</u> Minute Entry order dated Aug. 15, 2005, for Show Cause Hearing Held on Aug. 12, 2005.)

At the hearing, plaintiff's counsel advised that she had not propounded discovery demands by July 8, 2005, as previously ordered by the Court after multiple extensions.  The Court again ordered that plaintiff propound discovery demands, and serve responses to Euro Broker's discovery demands, by September 9, 2005.  (<u>Id.</u>)

The Court noted at the hearing that plaintiff's August 11, 2005 letter, in response to the order to show cause: (1) did not sufficiently set forth the dates and specific measures that plaintiff and her attorney took to comply with the Court's orders; (2) did not support plaintiff's claims of mental and physical incapacity with "current medical documentation regarding plaintiff's current mental, emotional and physical condition and the effect that her condition has on her ability to prosecute her action and comply with the Court's orders and respond to defendant's discovery requests"; and (3) did not explain why she failed to seek timely extensions of her time to respond to the Court's prior discovery orders. (Id.)

After discussion with plaintiff's counsel regarding supplemental submissions in support of her showing of cause why sanctions should not be granted, the Court ordered that by August 24, 2005, plaintiff and her counsel were permitted to supplement plaintiff's showing of cause by setting forth the specific dates and measures plaintiff took to comply with the Court's orders and the reasons why plaintiff did not timely seek extensions to comply with Court orders. The Court also ordered plaintiff to provide medical documentation of her current medical and mental condition with specific information regarding how her condition had affected her ability to prosecute her claim and respond to the Court's orders (e.g., "the extent to which plaintiff is unable to travel,

10

use the telephone or complete and gather documentation such as her UNUM disability application, authorizations and documents responsive to defendant's discovery demands").  The Court further ordered that by September 9, 2005, in reply to plaintiff's supplemental showing of cause on August 24, Euro Brokers was to advise whether, in light of plaintiff's anticipated showing, it would pursue its sanctions motion.  (<u>Id.</u>)[1]

**5.   *The Court's Order of August 24, 2005***

By letter dated August 23, 2005, plaintiff's counsel timely sought an extension of the August 24, 2005 deadline to supplement her showing of cause.  (<u>See</u> Doc. No. 23, Letter from Ruth M. Pollack, dated Aug. 23, 2005.)  In her request, Ms. Pollack claimed that plaintiff's psychologist, Dr. Maureen Kaley,

---

[1] Plaintiff's counsel also questioned whether the Court, in considering Euro Broker's sanctions motion, would be impartial, based on the past relationship, over one year ago at that time, between plaintiff's counsel and the undersigned as adversary counsel, prior to the undersigned being appointed as a magistrate judge.  Noting that, upon the record before the Court, the undersigned did not believe that the Court's impartiality could reasonably be questioned, the Court stated that it would consider the matter further, and that plaintiff's counsel could make an appropriate application.  Plaintiff's counsel, to date, has not moved to recuse the undersigned.  Recently, however, plaintiff filed an "emergency" letter motion to reassign the case and for a conference before Judge Sifton, who denied plaintiff's application "without prejudice to its renewal by motion returnable initially before the [Magistrate] Judge on notice to all parties and the [Magistrate] Judge." (Doc. Nos. 58, 62, Letter from Ruth M. Pollack, dated Mar. 2, 2006.)  Plaintiff has not renewed her motion as of the date of this decision.

had called on August 22, 2003 to say that she had been away on vacation and had just started to compile plaintiff's medical documentation.  Ms. Pollack's letter further stated that she "reasonably require[d]" an extended deadline of September 7, 2005 to include, as part of her supplemented show cause submission, information from health care providers "due to their schedules and my vacation of August 26, 2005 through September 5, 2005."  (<u>Id.</u>)

By order dated August 24, 2005, the Court granted plaintiff's request for an extension until September 7, 2005, thereby providing a third opportunity for plaintiff to show cause why sanctions should not be imposed.  (<u>See</u> Order dated Aug. 24, 2005.)

**6.   *The Court's Order of September 8, 2005***

On September 8, 2005, one day after the third show cause deadline had passed, plaintiff's counsel submitted another request to extend the deadline to September 16, 2005, so that she could receive reports from plaintiff's psychiatrist and psychologist. (<u>See</u> Doc. No. 24, Letter from Ruth M. Pollack, dated Sept. 8, 2005.)  Ms. Pollack represented that the extension was necessary because plaintiff's physicians "have been on vacation and despite my calls . . . I could not relay the requirements to them except by a facsimile," and that plaintiff's psychologist, Dr. Maureen

12

Kaley, "will be able to prepare the documentation required by this Court within the next week, possibly sooner." (Id.)

By order dated September 8, 2005, the Court granted the plaintiff a fourth extension until September 16, 2005, and again admonished plaintiff's counsel for failing to seek a timely extension to file plaintiff's Court ordered response to the order to show cause. The Court added that "Ms. Pollack . . . should not expect nor request any further extensions of time." (See Order dated Sept. 8, 2005.) In granting the extension, the Court observed that Ms. Pollack's September 8 letter to the Court failed to set forth the frequency, specific dates and means by which she attempted to contact plaintiff's psychologist and psychiatrist, and did not include a copy of the facsimile that was purportedly sent to the medical experts. (Id.)

Subsequently, without an explanation or a timely request for an extension of the September 16, 2005 deadline, plaintiff again failed to submit anything on September 16. By letter dated September 22, 2005, Euro Brokers reviewed the plaintiff's long history of failing to comply with Court orders and seek timely extensions, and requested that the Court grant its motion for sanctions, and allow it to respond to the "scurrilous" statements in plaintiff's August 11, 2005 submission. (Doc. No. 25.) By order dated September 23, 2005, the Court granted the request of Euro Brokers to respond by September 30, 2005 to plaintiff's prior

13

submissions.  Euro Brokers responded by letter dated September 30, 2005.  (Doc. No. 28.)

By letter dated September 26, 2005, plaintiff advised the Court that she had mailed to defense counsel discovery responses, unspecified records and a report by plaintiff's treating psychiatrist, and that she expected to provide a report from plaintiff's treating psychologist "in the next two days," or by September 28, 2005.  (Doc. No. 26.)  Plaintiff also asked for another hearing "to set forth the circumstances which have made meeting deadlines so difficult and so I can show the Court the circumstances outside of my control which required me to ask for time and a flexible schedule." (Id.)  Plaintiff did not address her failure to comply with the September 16, 2005 deadline, nor include the supplemental information relating to the order to show cause and the Court's prior orders.  (Id.).

By letter dated September 27, 2005, Euro Brokers opposed plaintiff's belated request for a second show cause hearing on the grounds that plaintiff's time to submit a detailed response to the order to show cause hearing expired on September 16, 2005 without any response from plaintiff and that plaintiff and her counsel should not be granted another opportunity to provide the information in the form of live testimony.  (Doc. No. 27.)  Euro Brokers also contended that a hearing was not necessary given that the issue was "not the extent of plaintiff's illness," but "why

14

that illness precluded plaintiff and her counsel from meeting the
court's deadlines or timely requesting an adjournment of those
deadlines."  (Id. at 1.)

**7.   *The Court's Order of September 30, 2005***

          In response to plaintiff's September 26 letter and Euro
Brokers's September 27 letter, the Court, by order dated September
30, 2005, denied without prejudice plaintiff's request for a
second evidentiary hearing, finding that "an evidentiary hearing
is premature and unwarranted on the grounds that the defendant's
Rule 37 motion has not been fully briefed, despite repeated Court
orders granting plaintiff's counsel several extensions of time,
noting deficiencies in plaintiff's submissions, and affording
plaintiff ample opportunity to address those deficiencies."
(Amended Order, dated Sept. 30, 2005, at 2.)  The Court granted
plaintiff's counsel a final opportunity to supplement her
opposition to Euro Brokers's sanctions motion by October 14, 2005.
The Court also ordered that defendant Euro Brokers submit any
reply by October 21, 2005, and supplement any request for
attorneys' fees with contemporaneous time records.

          By letter dated October 14, 2005, plaintiff's counsel
requested "leave to file plaintiff's papers in Court drop box"
that night, due to plaintiff's counsel's computer system again
being repaired "after four days of ECF filing difficulties."

(Doc. No. 31.)  Plaintiff's letter indicated that plaintiff was still awaiting a report from Dr. Kaley (despite the September 26 representation by plaintiff's counsel that the Kaley report would be provided by September 28, 2005), and that plaintiff's psychiatric records were annexed.  Plaintiff asked that her letter be treated as an "application for until Monday morning [October 17, 2005], to overnight my materials to counsel for Euro Brokers Inc."  (Id.)

**8.   *The Court's October 14, 2005 Order***

By order dated October 14, 2005, the Court granted plaintiff's October 14 application and further ordered that plaintiff submit an affidavit by October 18, 2005, describing her efforts to obtain Dr. Kaley's report, the dates such efforts were made, and when the report would be submitted to the Court. Plaintiff was advised that the Court would not consider Dr. Kaley's report unless plaintiff's explanatory affidavit was submitted by October 18, 2005.  The Court further extended plaintiff's time to serve defendants with her supplemental show cause submission, and extended the time for Euro Brokers to submit a reply and contemporaneous time records.  (Doc. No. 32.)

### 9.   *Plaintiff's Show Cause Submissions*

Under cover of letter dated October 18, 2005, plaintiff submitted her supplemental showing of cause in opposition to the motion of Euro Brokers for sanctions.  (Doc. No. 33.)  She enclosed a report dated over two years earlier, July 29, 2003, from plaintiff's treating psychiatrist, Dr. Edward Sodaro, and requested an additional three weeks to submit a report from plaintiff's treating psychologist, Dr. Kaley, who reportedly had been on vacation for the past two weeks.

Plaintiff's counsel further stated that she tried to reach plaintiff and her doctors several times per week by telephone, but could not provide specific dates because she "did not keep contemporaneous records" for each call.  (Id. at 2.)  In addition to describing her difficulties communicating with plaintiff due to plaintiff's unpredictable condition, plaintiff's counsel stated that since June 2003, she herself was "partially disabled from ovarian cancer and . . . complications," and cited her "own disability and fatigue," as a reason that she could not respond timely to the Court's orders.  (Id.)  Plaintiff's counsel complained that she could not meet the Court's requests for definite dates by which she could comply with the Court's orders, insisting that she "required flexibility," but had not received the flexibility requested, and felt "like I have been in a vice grip. . . ."  (Id.)

Plaintiff's counsel further reported that she had forwarded HIPAA forms and letters to plaintiff's doctors and defendants' counsel, and had responded to Euro Brokers's first request for documents. (Id. at 1.) Plaintiff's counsel also stated that she had left the state on October 14, when the Court issued its order, and, therefore, delivered her supplemental show cause submission to Euro Brokers's counsel on the evening of October 18. Plaintiff's counsel stated that if the Court did not find plaintiff's medical documentation sufficient, once it was submitted, she and her client would appear at a hearing to testify, claiming that sanctioning her client "will add to her mental disability, without a doubt." (Id. at 3.)

By letter erroneously dated September 19, instead of October 19, 2005 (the date the letter was filed by ECF), plaintiff's counsel reported that she had not served counsel for Euro Brokers at her office on October 18, 2005 with her supplemental show cause submission, as previously represented, because she had not been granted access to counsel's office. Plaintiff further stated that she served her letter on defense counsel by ECF, and the medical reports and records by facsimile. (Doc. No. 34.)

On October 19, 2005, in further opposition to the motion for sanctions, plaintiff's counsel submitted an "Attorney's Affirmation of Due Diligence," dated October 18, 2005 (Doc. No.

18

35, Pl. Att. Aff.), which was, according to plaintiff's counsel,
"an affidavit format of the sum and substance of my letter of
September 18 [which correctly should have been dated October 19],
2005." Plaintiff also submitted an affidavit, dated over two
months earlier on August 15, 2005 (Doc. No. 35, Pl. Aff.), which
described plaintiff's encounters with her employer since September
11, 2001 (Id. ¶¶ 2, 3, 11), and her difficulties with daily
activities such as leaving her home, responding to telephone calls
and mail, paying bills and traveling (Id. ¶¶ 4, 9), and requested
that the Court not punish her or her attorney "for not being able
to comply with deadlines at all times without difficulty," because
her attorney "always called my home and husband and followed up
when she did not hear from us." (Id. at 10.)

        In a submission dated October 24, 2005, and submitted by
ECF on October 25, 2005, counsel for Euro Brokers replied to
plaintiff's showing of cause, and included therewith an
affirmation by its counsel, Marjorie Berman, Esq., dated October
25, 2005, and an invoice for legal services rendered in connection
with the sanctions motion. (Doc. No. 37.) Euro Brokers responded
that the plaintiff's recent supplemental submission did not
provide the following, as ordered by the Court at the initial show
cause hearing on August 12, 2005 (Order dated Aug. 15, 2005):
(1) the specific dates and measures plaintiff took to comply with
this Court's orders, (2) the reasons why plaintiff did not timely

seek extensions from her adversary counsel or the Court to comply with Court orders, and (3) medical documentation of plaintiff's current medical condition with specific information regarding how her condition has affected her ability to prosecute her claim and respond to Court orders, including, for example, the extent to which plaintiff is unable to travel, use the telephone, or complete and gather documentation such as her UNUM disability application, authorizations, and documents responsive to defendants' discovery demands. (See Doc. No. 37-1, Letter from Marjorie E. Berman, dated Oct. 24, 2005, at 1-2.)

Euro Brokers further stated that it was necessary to pursue its sanctions motion "because plaintiff's recalcitrance in prosecuting the action has cost Euro Brokers significant time and resources," and pointed out that the sanctions motion alone had been before the Court for nearly three months, requiring multiple submissions by Euro Brokers, "largely due to plaintiff's refusal or unsubstantiated inability to comply with any schedule for submissions" set by the Court. (Id. at 4).

Counsel for Euro Brokers annexed as Exhibit 2 counsel's contemporaneous time records relating to the sanctions motion, and counsel's affidavit explaining the billing entries. Euro Brokers's billing records indicate that counsel for Euro Brokers expended 31.1 hours relating to its motion for sanctions, at the

rate of $390 per hour, for a total of $12,129.00.   (Doc. Nos. 37-3 and 37-4.)

**10.   *The Court's Order of November 10, 2005***

At a conference on November 10, 2005, Court granted yet another request by plaintiff to make the following additional submissions, by November 30, 2005, in opposition to Euro Brokers's motion for sanctions: (a) a psychiatric report regarding the extent of plaintiff's inability to assist counsel in the prosecution of her action, (b) a sworn statement by plaintiff's counsel with supporting documentation regarding the dates and the nature of the efforts she and plaintiff made to comply with this Court's orders and the reasons why she did not seek timely extensions of time to comply, (c) to the extent plaintiff's counsel asserted that her own physical condition prevented her from complying with the Court's orders and from seeking timely extensions, documentation regarding counsel's condition and how it affected her, from the date of the initial conference on 6/16/05 to the present, and (d) any other documentation that plaintiff wished to submit.[2]   The Court also scheduled a second hearing for

_____

[2] By repeatedly granting plaintiff numerous extensions to submit documentation in opposition to Euro Broker's sanctions motion and in support of her showing of cause, the Court by no means intended to encourage or convey approval of plaintiff's continued noncompliance with Court orders.  The Court instead intended to afford plaintiff and her counsel a full opportunity to make what they considered a complete and sufficient showing in

oral argument and any testimony on Euro Broker's motion for sanctions for December 14, 2005.

In an affirmation dated November 30, 2005, plaintiff's counsel stated that she had submitted to the Court and served defense counsel, under separate cover, a copy of a report from Dr. Maureen Kaley, dated November 22, 2005, detailing the "history of the profound medical problems of plaintiff," and warranting the denial of sanctions.  (Doc. No. 38.)  In addition, plaintiff's counsel discussed her own treatment, including side effects and complications, for ovarian cancer between June 2003 and October 2004.  Plaintiff's counsel also stated that she had "supplied enough medical documentation for any reasonable person to believe me" (id. ¶ 5), however, plaintiff's counsel has not submitted any such documentation regarding her condition.[3] Plaintiff's counsel further stated as follows:

> I am under no obligation to reveal my health in this way.  I am not on trial.  This Court is very kind to entertain [Euro Broker's] application.  If I were a judge, I would throw them out on their ear.

(Id. ¶ 7.)

_____

opposition to the sanctions motion.

[3] Although the Court had no reason to doubt that plaintiff's counsel was treated for ovarian cancer, on November 10, 2005, the Court granted the request of plaintiff's counsel to submit by November 30, *inter alia*, documentation as to how her own condition affected her ability to comply with Court orders during the time period at issue.

Plaintiff's counsel stated that she did not make advance applications for adjournments of the Court's orders because she "did not want to have to do so," and could not predict, due to the reasons stated in Dr. Kaley's report, what amount of time she would require "until it was too late." (Id. ¶ 6.) Plaintiff's counsel also stated that "[h]ad the Court and counsel agreed to my request for a control date and conferences along the way, I would not have had to make so many applications or any at all." (Id. ¶ 6.) Counsel again stated that she could not give specific dates for her attempts to reach plaintiff and her doctors, as she called from her car, home and office and did not keep contemporaneous records. She further stated that since June 2005, she met with plaintiff once or twice in her office, met with plaintiff's husband several times throughout the summer, wrote letters which are privileged, contacted all of plaintiff's treating doctors, filed two complaints and discovery responses, prepared a power of attorney for plaintiff's husband, mailed copies of all orders and document demands to the plaintiff, followed up with calls to plaintiff's husband "most of the time," and read and responded to letters and emails of defense counsel. (Id. ¶ 8.)

The Court heard oral argument from the parties on December 14, 2005. Plaintiff did not attend the hearing.

Plaintiff's husband attended the argument, however, plaintiff's counsel did not call him to testify.

## DISCUSSION

### A.   Bases For Sanctions

Federal Rule of Civil Procedure 37, entitled, "Failure to Make Disclosures or Cooperate in Discovery; Sanctions," provides procedures for compelling disclosures mandated by Rule 26(a) and responses to discovery.  Rule 37(b), upon which Euro Brokers's sanctions motion is predicated, provides for the imposition of sanctions "[i]f a party . . . fails to obey an order. . . to provide or permit discovery, . . . or fails to obey an order entered under Rule 26(f)."  In addition, pursuant to Rule 37(c)(1), "if a party 'without substantial justification fails to disclose information required by Rule 26(a). . .' the court may impose sanctions, including but not limited to any of the actions authorized under Rule 37(b)(2)(A), (B), and (C)." MCI Worldcom Commc'ns, Inc. v. Gamma Commc'ns Group, Inc., 204 F.R.D. 259, 261 (S.D.N.Y. 2001).

Those sanctions include:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for purposes of the action. . . . ;
(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated

24

> matters in evidence; (C) An order striking the
> pleadings or parts thereof, or staying further
> proceedings until the order is obeyed, or dismissing
> the action or proceeding or any party thereof, or
> rendering a judgment by default against the disobedient
> party.

Fed. R. Civ. P. 37(b)(2)(A)-(C).  Rule 37(b) further provides

that in lieu of, or in addition to, any of the foregoing orders,

"the court shall require the party failing to obey the order or

the attorney advising that party or both to pay the reasonable

expenses, including attorney's fees, caused by the failure,

unless the court finds that the failure was substantially

justified or that other circumstances make an award of expenses

unjust."

Rule 16(f) also provides a basis for the Court, on its

own initiative, or upon a motion by a party, to impose sanctions

if a party or attorney fails to obey a scheduling order or a

pretrial order, such as those at issue in the instant motion.

The sanctions provided by Rule 16(f) are the same as those

provide by Fed. R. Civ. P. 37(b)(2)(B), (C) and (D).  Like Rule

37, Rule 16(f) also provides that, in lieu of or in addition to

any other sanction, the judge "shall require the party or the

attorney representing the party or both to pay the reasonable

expenses incurred because of any noncompliance with this rule,

including attorney's fees, unless the judge finds that the

noncompliance was substantially justified or that other

circumstances make an award of expenses unjust."  In determining

25

whether sanctions pursuant to Rule 16(f) are appropriate, courts apply the same standards developed with respect to Rule 37(b)(2) sanctions.  <u>See</u> Fed. R. Civ. P. 16 Advisory Committee Notes, 1983 Amendment ("Rule 16(f) incorporates portions of Rule 37(b)(2), which prescribes sanctions for failing to make discovery.  This should facilitate application of Rule 16(f), since courts and lawyers already are familiar with the Rule 37 standards."); <u>Salahuddin v. Harris</u>, 782 F.2d 1127, 1133 (2d Cir. 1986); <u>Mack v. United States Postal Serv.</u>, 1996 WL 546276 (E.D.N.Y. Sept. 18, 1996).

The Court's initial pretrial scheduling conference orders, dated May 11, June 14 and June 28, 2005, issued pursuant to Federal Civil Rules 16(b) and (e) and 26(f), directed, *inter alia*, that the plaintiff provide signed authorizations for medical records, and that the parties exchange mandatory Rule 26(a) disclosures and discuss and adhere to a discovery plan. These orders, as well as the Court's subsequent scheduling orders extending deadlines by which plaintiff was to serve discovery demands, respond to discovery and provide documentation in support of the Court's show cause order, all provide a proper basis upon which Rule 37(b) sanctions may be issued.  <u>See, e.g.</u>, <u>Daval Steel Prods. v. M/V Fakredine</u>, 951 F.2d 1357, 1363 (2d Cir. 1991) (holding that Rule 37(b) provides a basis to impose sanctions for noncompliance with any "clearly articulated order

of the court requiring specified discovery"); MCI Worldcom
Commc'ns, Inc., 204 F.R.D. 259 (imposing sanctions for failure to
provide Rule 26(a) disclosures and to comply with court's
discovery plan); Camara v. Daise, 2001 WL 263006 (S.D.N.Y. Mar.
9, 2001) (holding that "scheduling orders" provide a proper basis
for sanctions under Rules 16(f) and 37(b)).

The parties do not dispute that plaintiff and her
counsel failed to comply with the Court's pretrial scheduling
orders upon which the Euro Brokers's sanctions motion is
predicated.  Plaintiff asserts, however, that the Euro Brokers
sanctions motion is premature and that, in any event, her medical
and/or psychological condition and her counsel's history of
ovarian cancer and other unanticipated difficulties, warrant
denial of sanctions.

The Court first considers plaintiff's assertion during
oral argument that the sanctions motion is premature because Euro
Brokers should first have attempted to confer with plaintiff's
counsel regarding the noncompliance, and then moved for an order
compelling the plaintiff's Rule 26(a) disclosures and
authorizations, pursuant to Fed. R. Civ. P. 37(a).  At the time
of Euro Brokers's sanctions motion on August 2, 2005, this Court
had thrice ordered, on May 11, June 16 and June 28, 2005, that
the parties provide their Rule 26(a) disclosures and that
plaintiff provide authorizations for medical, insurance and

27

financial/employment records.  Moreover, the Court had twice
conferred with the parties, on June 16 and June 28, 2005, during
which plaintiff's counsel noted that her client had psychological
difficulties which could impair her ability to prosecute her
action and comply with court orders.

At those conferences, the Court consulted plaintiff's
counsel about dates by which her client could comply with her
obligations to make disclosures and provide authorizations,
advised counsel that plaintiff was expected to comply with the
dates discussed with counsel and ordered by the Court, and
further advised plaintiff's counsel that upon a timely
application for an extension, setting forth the reasons why an
extension was necessary, the Court would be inclined to grant an
extension.  Upon the foregoing procedural history, the Court
rejects plaintiff's argument that counsel for Euro Brokers should
first have conferred with her and then moved for yet a fourth
order to compel plaintiff's compliance with the three previous
orders.  The Court thus determines that the sanctions motion is
not premature.

### B.   Exercise of Discretion to Impose Sanctions

Turning next to the merits of the sanctions motion, the
Court has broad discretion to impose sanctions for failure to
comply with its orders pursuant to Rule 37(b).  See Residential
Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir.

2002); Reilly v. Natwest Markets Group Inc., 181 F.3d 253, 267
(2d Cir. 1999), cert. denied 528 U.S. 1119; USA Gateway Inc. v.
Spring Travel, 2004 WL 3030183, at *4 (S.D.N.Y. Dec. 30, 2004).
Among the factors relevant to a court's exercise of its
discretion to impose sanctions are: (1) the willfulness of the
non-compliant party or the reason for the noncompliance; (2) the
efficacy of lesser sanctions; (3) the duration of the non-
compliance, and (4) whether the non-compliant party has been
warned of the consequences non-compliance. See Bambu Sales, Inc.
v. Ozak Trading, Inc., 58 F.3d 849, 852-54 (2d Cir. 1995); USA
Gateway, 2004 WL 3030183, at *4.  No particular factor is
dispositive, as "sanctions must be weighed in light of the full
record in the case." Cine Forty-Second St. Theatre Corp. v.
Allied Artists Pictures Corp., 602 F.2d 1062, 1068 (2d Cir. 1979)
(citing National Hockey League v. Metropolitan Hockey Club, Inc.,
427 U.S. 639, 642 (1976)).


## 1.   *Willfulness or Reasons for Non-Compliance*

        Considering the first factor, whether plaintiff's non-
compliance was willful, or the reasons for plaintiff's non-
compliance, non-compliance may be deemed willful "when the
court's orders have been clear, when the party has understood
them and when the party's noncompliance is not due to factors
beyond the party's control." Baba v. Japan Travel Bureau Int'l,
Inc., 165 F.R.D. 398, 402-403 (S.D.N.Y. 1996), aff'd 111 F.3d 2

(2d Cir. 1997).  Plaintiff does not claim that the Court's orders
were not clear or that she did not understand the orders.
Rather, plaintiff claims that her own mental and physical
condition and the physical condition of her counsel prevented her
from complying with the Court's orders.

        The illness of a person subject to sanctions may be
considered in deciding whether and what type of sanctions may be
imposed, upon a proffer of the nature of the illness and its
impact on one's ability to comply with the Court's orders, and
supporting evidence such as a sworn statement or other medical
documentation to support the claim of illness.  Bambu Sales, 58
F.3d at 851-52 (default judgment warranted where magistrate judge
determined that "defendants had engaged in a pattern of 'tactical
obstruction,'" throughout the discovery process and had failed to
proffer any documentary evidence in support of their claim that
defendant was "stricken with a 'grave illness.'"); see also
Gurary v Nu-Tech Bio-Med, 303 F.3d 212, 225 (2d Cir. 2002), cert.
denied 538 U.S. 923 (2003) (party who brought a frivolous claim
failed to defeat sanctions motion with proffered excuse of
illness because he "refused to submit financial statements,
medical bills, and other documents which would allow the court to
assess the impact of his health problems"); Santos v. New York
City Hous. Auth., 2003 WL 1213335 (S.D.N.Y. Mar. 17, 2003) (court
dismissed plaintiff's disability discrimination action under the
ADA for failure to prosecute, pursuant to Fed. R. Civ. P. 41(b),

because plaintiff failed to comply with four court orders to provide medical authorizations, and his unsigned medical reports did not correlate with his failure to comply with court orders and discovery requests); cf. Gill v. Stolow, 240 F.2d 669, 671 (2d Cir. 1957) (Court of Appeals vacated default judgment, entered after defendant failed to appear for a court-ordered deposition, where defendant submitted proof in the form of affidavits from himself, his brother, doctors and his attorney, demonstrating that he had been in ill health, which had prevented him from traveling to New York from Munich for a deposition).

On numerous occasions, the Court ordered and also extended the time for plaintiff and her counsel to submit documentation of the conditions which they claimed prevented them from complying with the Court's orders. (See Orders dated Aug. 2, 2005, Aug. 5, 2005, Aug. 15, 2005, Aug. 24, 2005, Sept. 8, 2005, Sept. 30, 2005, Oct. 14, 2005, Nov. 11, 2005.) The Court also directed plaintiff's counsel to provide specific information, including supporting documentation, regarding the dates that she attempted to comply with the Court's orders and obtain a report from plaintiff's treating health care providers regarding plaintiff's condition during the period that she failed to comply with the Court's orders. (See Minute Entry Order dated Aug. 15, 2005, for Show Cause hearing held on Aug. 12, 2005; Order dated Oct. 14, 2005.) Plaintiff and her counsel never provided specific information or supporting documentation of their efforts

31

to comply with the Court's orders, because plaintiff's counsel
stated that she does not keep contemporaneous time records of the
numerous calls and mailings that she claims to have made to
plaintiff and her doctors.

On November 30, 2005, over two months and five orders
after the first August 12 order directing that plaintiff provide
medical documentation, plaintiff provided a report dated November
22, 2005, by Dr. Maureen Kaley, a psychologist.  Although the
report of Dr. Kaley sets forth plaintiff's account of the extent
of her impairment and its impact on her ability to function, thus
militating against imposing a sanction against the plaintiff,
plaintiff does not adequately explain why her husband, who has
been provided power of attorney, did not assist plaintiff and her
counsel with completing the mandatory Rule 26(a) disclosures and
executing the authorizations in order to meet the Court's
deadlines.

Plaintiff's counsel noted in several submissions and at
the show cause hearings that her own history of ovarian cancer
was a factor that prevented her from complying with the Court's
orders. (See Doc. No. 33, Letter from Ruth Pollack, Esq., dated
Oct. 18, 2005; Doc. No. 38, Pl.'s Attorney's Affirm., dated Nov.
30, 2005.)  Although the Court has no reason to doubt plaintiff's
medical history, plaintiff's counsel requested and was granted
the opportunity to submit documentation as to how that history
affected her ability to comply with the Court's orders.

(Corrected Minute Entry dated Nov. 11, 2005 regarding Nov. 10, 2005 conference.)

The response of plaintiff's counsel, in an affirmation dated November 30, 2005, stated "I am under no obligation to reveal my health in this way.  I am not on trial.  My doctors and colleagues are incensed at this." (Doc. No. 38, ¶ 7.)  She further stated that her disability from ovarian cancer began in June 2003, with subsequent complications that "continued until recently," that she is in remission, and that she had "supplied enough medical documentation for any reasonable person to believe me." (Id. ¶ 5.)

Plaintiff's counsel did not, however, provide documentation or specific information as to how her cancer sequelae affected her ability to comply with the Court's orders or prevented her from seeking timely adjournments of the Court's numerous orders.  Plaintiff's counsel stated that "[t]he main reason I did not make advance applications for adjournments was that I did not want to have to do so." (Id. ¶ 6.)  Consequently, the Court concludes that plaintiff's counsel has not demonstrated that her own condition prevented her from complying with the Court's orders or seeking timely extensions.  See Bambu Sales, 58 F.3d 849 (upholding default judgment against defendant who claimed he was too ill to comply with Court's discovery order, but failed to provide medical documentation establishing that fact, and failed to explain why he failed to seek relief from the

33

Court's order); <u>Santos</u>, 2003 WL 1213335, at *5 (noting that the plaintiff, who had offered medical reports to prove his illness, had "offered nothing to correlate those medical reports with his failure to comply with court orders and simple discovery requests").

### 2.   *Efficacy of Lesser Sanctions*

The Court next considers the efficacy of lesser sanctions than the dismissal sought by Euro Brokers.  Any sanction issued under Rule 37(b)(2) must be "just" and "must relate to the particular claim to which the discovery order was addressed."  <u>Daval Steel Prods.</u>, 951 F.2d at 1366 (citations omitted).

The sanctions of dismissal and striking the pleadings are the most drastic of sanctions and should be imposed only upon a showing of "willfulness, bad faith, or fault," and after notice that noncompliance can result in dismissal.  <u>Simmons v. Abruzzo</u>, 49 F.3d 83, 88 (2d Cir. 1995); <u>see also</u> <u>Valentine v. Museum of Modern Art</u>, 29 F.3d 47, 49-50 (2d Cir. 1994); <u>Baba</u>, 111 F.3d at 5.  By order dated August 5, 2005, upon granting plaintiff's fourth request for an extension to serve initial disclosures and discovery demands, the Court warned plaintiff that "further extensions will not be granted and that if she fails to comply fully by 8/12/05, this [C]ourt will recommend that plaintiff's action be dismissed pursuant to Fed. R. Civ. P. 37 and 41(b)."

Further, plaintiff was on notice of Euro Brokers's request for
dismissal.  See Bambu Sales, 58 F.3d at 853.  However, in light
of the contentions of plaintiff and her counsel that their
illnesses impeded their ability to comply with the Court's
orders, and mindful of the "strong policy favoring trial on the
merits," Welch v. Alexis, 2004 WL 1920810, at *2 (E.D.N.Y. May
26, 2004) (quoting In re Bernholdt, 74 B.R. 760, 763 (Bankr.
N.D.N.Y. 1987)); see also Gill, 240 F.2d at 670, the Court
determines that dismissal would not be just, and accordingly,
denies the motion of Euro Brokers to dismiss this action.

        The other sanctions enumerated in Rules 37(b)(2)(A)-
(C), to the extent that they relate to disclosures and
authorizations in support of plaintiff's claim of disability,
would also unduly punish the plaintiff, for example, by
establishing designated facts or precluding her from presenting
evidence of her disability, thus striking at the heart of her
claim.  The report of Dr. Kaley presents evidence of plaintiff's
psychological and functional impairments resulting from
plaintiff's proximity to the terrorist attack on the World Trade
Center.  Dr. Kaley's report, however, lacks a specific discussion
correlating plaintiff's impairments with her failures to meet her
Court ordered deadlines during the time period at issue.
Nonetheless, the Court finds that, under the circumstances
presented by the record, a monetary sanction would best serve the
purposes of Rules 37 and 16(f).

### 3.   *Duration of Non-Compliance*

The third factor, the duration of the noncompliance, militates in favor of an award of sanctions.  The Court first ordered on May 11, 2005, that plaintiff provide Rule 26(a) disclosures and authorizations, in advance of her Rule 26(f) conference with defendants and in advance of the June 16, 2005 Rule 16 conference with the Court.  Over the course of the next three months, the Court issued additional orders directing that plaintiff provide Rule 26(a) disclosures and authorizations, however, it was not until the first show cause hearing on August 12, 2005, that plaintiff provided an incomplete Rule 26(a) disclosure.

Thereafter, in a letter dated August 23, 2005, plaintiff's counsel reported that she had provided defense counsel with authorizations, and that she would require additional time, until September 7, 2005, to obtain additional information from plaintiff's health care providers.  It is not clear from plaintiff's August 23 submission whether she intended to provide additional authorizations.  (Doc. No. 23.)  Based on the record before the Court, plaintiff did not provide authorizations until August 23, 2005, and did not offer any explanation for her lack of compliance until her submission on November 30, 2005.  Moreover, the record is replete with numerous instances of continued non-compliance with the Court's orders by plaintiff and her counsel in response to the Order to Show Cause,

36

between early August and late November 2005.  Consequently, the
duration of noncompliance warrants the imposition of a monetary
sanction.

**4.   *Knowledge of the Consequences of Non-Compliance***

        The fourth factor in considering whether to impose
sanctions is whether the party has been warned of the
consequences of noncompliance.  The Second Circuit has noted that
"[a]lthough formal warnings often precede the imposition of
serious sanctions, this court has never considered warnings an
absolute precedent."  <u>Daval Steel Prods.</u>, 951 F.2d at 1366.  The
Second Circuit explained, "[w]e decline to hobble the necessary
discretion of district courts to control discovery by imposing a
further requirement of formal and specific warnings before
imposing Rule 37(b)(2) sanctions, bearing in mind that . . . such
sanctions can only be imposed for violation of a specific,
previously entered court order.  Parties and counsel have no
absolute entitlement to be 'warned' that they disobey court
orders at their peril."  <u>Id.</u>  The plaintiff and her counsel do
not deny that the Court repeatedly admonished plaintiff's counsel
to comply with the Court's orders, or seek timely extensions.
Nor could plaintiff's counsel deny that she was unaware that she
and her client could be subject to sanctions for defying court
orders.  The Court thus determines that the fourth factor to be

                                    37

considered in determining whether to impose sanctions is also satisfied.

### C.   Purposes of Rule 37 Sanctions

The Court further determines that a monetary sanction will effectuate the three purposes of Rule 37: (1) obtaining compliance with the Court's orders; (2) ensuring that the disobedient party does not benefit from non-compliance; and (3) providing a general deterrent in the particular case and litigation in general.  See National Hockey League, 427 U.S. at 643; Nieves v. City of New York, 208 F.R.D. 531, 535 (S.D.N.Y. 2002) (citing cases); see also Salahuddin, 782 F.2d at 1133 ("Rule [16(f)] was intended 'to encourage forceful judicial management'").

### 1.   Obtaining Compliance With Court Orders

As set forth in detail above, the Court repeatedly granted every one of plaintiff's numerous requests for extensions, even when made after the previous deadline had expired in contravention of the Court's admonitions.  The eventual compliance with multiple Court orders after multiple failures to do so, does not negate the basis for the sanctions award.  See National Hockey League, 427 U.S. at 642 (affirming, pursuant to Rule 37(b)(2)(C), dismissal of action for repeated

38

failure to comply with court orders compelling discovery, despite
fact that responses to interrogatories were eventually filed);
<u>Cine Forty-Second St. Theater Corp.</u>, 602 F.2d at 1068; <u>J.M.</u>
<u>Cleminshaw Co. v. City of Norwich</u>, 93 F.R.D. 338, 347 (D. Conn.
1981) (citing cases).  Moreover, as noted above, the Court
explicitly warned plaintiff that noncompliance could result in
dismissal of the case.  The record, viewed as a whole, adequately
demonstrates the need for sanctions to assure future compliance
with Court orders in this matter.


**2.   *Preventing Benefits to the Non-compliant Party***

          In considering the second purpose of a Rule 37
sanction, ensuring that the disobedient party does not benefit
from non-compliance, the Court first notes that Euro Brokers's
compliance with this Court's orders is undisputed.  As set forth
extensively in its submissions, Euro Brokers expended
considerable resources complying with this Court's orders to
provide Rule 26(a) disclosures and serve discovery demands, and
pursuing plaintiff's compliance with the Court's orders.  In its
sanctions motion in August 2005, Euro Brokers asserted that it
was unjust and prejudicial that defendants were required to
expend time and resources litigating this action when the
plaintiff had not seen fit to prosecute this action.  (Doc. No.
20-1, Letter from Marjorie E. Berman, dated Aug. 2, 2005, at 3.)

The Court ordered the exchange of Rule 26(a) disclosures by all parties and the production of plaintiff's authorizations early in the litigation, so that the parties could more efficiently and effectively pursue discovery.  Plaintiff's repeated failures to comply with the Court's pretrial orders resulted in a benefit to plaintiff, not shared by Euro Brokers, to the extent that plaintiff was in possession of defendants' disclosures prior to belatedly propounding her discovery demands to defendants.

Unlike plaintiff, Euro Brokers did not have the benefit of plaintiff's initial disclosures to guide and formulate its discovery demands, which were timely served in accordance with the Court's orders.  The progress of this case has been significantly thwarted by the plaintiff's noncompliance and the resulting sanctions litigation.  Consequently, Euro Brokers's ability to defend this action has been hampered by the delays. Thus, not only has plaintiff benefitted from her noncompliance, Euro Brokers has suffered significant prejudice.  See Shannon v. General Elec. Co., 186 F.3d 186, 195 (2d Cir. 1999)("Prejudice is presumed when a plaintiff's refusal to comply with court orders causes unreasonable delays."); Lyell Theater Corp. v. Lews Corp., 682 F.2d 37, 43 (2d Cir. 1982) (same).  Sanctions are warranted to compensate Euro Brokers for the time and resources it has

expended in seeking plaintiff's compliance with the Federal Rules and this Court's orders.

### 3.   Deterrence of Similar Conduct

The Court next considers the third purpose of sanctions under Rule 37, deterrence of similar conduct in this particular case and in litigation in general.  The Court notes that, even in the face of a sanctions motion by Euro Brokers, and an order to show cause, plaintiff and her counsel repeatedly disregarded court ordered deadlines, and did not seek timely adjournments. Thus, an award of sanctions is likely to deter similar future conduct in this case.

### D.   Monetary Sanctions for Fees Are Warranted

In sum, notwithstanding the burdens and inconvenience to the Court and defendants resulting from the repeated lack of compliance with this Court's scheduling orders and the many subsequent orders extending again and again plaintiff's time to comply and respond, the Court granted even untimely extension requests in consideration of, and out of concern for, plaintiff and her counsel.  The Court's consideration and concern are not without limit, however.  Plaintiff, like all other plaintiffs, including those who may also suffer from physical or mental disabilities, and including those whose counsel may also have

41

serious medical histories, is required to prosecute her action and comply with court orders.  Moreover, as Euro Brokers notes in its March 13, 2006 letter, "it is Euro Brokers who has been prejudiced and required to expend significant resources to respond to application after application for relief, simply because plaintiff's counsel is unwilling or allegedly unable to comply with the Court's Orders and deadlines."  (Doc. No. 64, Letter from Marjorie E. Berman, dated Mar. 13, 2006, at 2.)

Accordingly, with the utmost consideration for plaintiff and her counsel, the Court grants the motion by Euro Brokers for sanctions.  The Court determines that, in these circumstances, a monetary sanction representing a portion of the costs and fees expended by Euro Brokers on the sanctions motion is just and authorized by Rule 37(b)(2) (in lieu of sanctions enumerated in 37(b)(2)(A)-(E), "the court shall require the party . . . or the attorney . . . to pay the reasonable expenses, including attorneys fees, caused by the failure").  The Court further finds that the purposes of Rule 37(b) and 16(f) would best be served by imposing sanctions upon plaintiff's counsel, rather than plaintiff herself.  See J.M. Cleminshaw Co., 93 F.R.D. at 344 (noting that, where an attorney is responsible for failing to comply with discovery orders, Rule 37(b) permits the court to hold that attorney personally liable for the award of fees and expenses).  At a minimum, plaintiff's counsel has failed

42

to explain why she has not sought timely adjournments of the Court's deadlines, other than stating that she "did not want to have to do so," thus conveying disregard for this Court and opposing counsel.  The Court determines that sanctions against plaintiff's counsel are warranted here to deter her and others who, absent such a deterrent, may be tempted to flout the orders of this or any other court.  See National Hockey League, 427 U.S. at 643.

### E. Calculation of Fees

In the Second Circuit, attorneys fees are determined according to the "lodestar" method, pursuant to which the reasonable number of hours spent is multiplied by a reasonable hourly rate.  I.B. v. New York City Dep't of Educ., 336 F.3d 79, 80 (2d Cir. 2003).  The party seeking reimbursement bears the burden of proving the reasonableness of the hours spent and rates charged.  Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984); Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989).

An examination of the affirmation and contemporaneous time records of Euro Brokers's counsel, Marjorie E. Berman, Esq., indicates that a total of 31.10 hours were expended by counsel on the sanctions motion alone, between June 10 and October 24, 2005, and that Ms. Berman's customary hourly billing rate is $390.00

43

per hour, resulting in a total of $12,129.00.  (Doc. Nos. 37-3, 37-4.)  Ms. Berman's time records are sufficiently detailed and establish the reasonableness of the hours expended on the sanctions motion, the litigation of which continued, in large measure because of plaintiff's repeated delays, through December 14, 2005, when the parties appeared for a second show cause hearing and argument on the motion.  See, e.g., Ashkinazi v. Sapir, 2005 WL 1123732 (S.D.N.Y. May 10, 2005) (finding reasonable 33.0 hours spent in connection with Rule 37 sanctions motion).

In addition to determining whether counsel's expenditure of time is reasonable, the Court must also determine the reasonableness of the hourly rate, based on the prevailing community rates and the experience of the attorney.  Blum, 465 U.S. at 895 n. 11.  In the Eastern District of New York, courts have awarded hourly rates to partners ranging from $200.00 to $375.00.  See Commission Express Nat'l, Inc. v. Rikhy, 2006 WL 385323 (E.D.N.Y. Feb. 17, 2006) ($300); Aiello v. Town of Brookhaven, 2005 WL 1397202, at *7 (E.D.N.Y. June 13, 2005) ($350) (compiling cases); General Motors Corp. v. Villa Marin Chevrolet, Inc., 240 F. Supp. 2d 182 (E.D.N.Y. 2002) ($315 to $375 based upon detailed description of experience and expertise); Luciano v. Olsten Corp., 912 F. Supp. 663 (E.D.N.Y. 1996) ($200 for partner at a small firm).

44

Ms. Berman requests a rate of $390 per hour.  Her affirmation states that she is a principal in the law firm of Krantz & Berman, LLP, but does not provide details regarding the length or breadth of her experience as an attorney.  (Doc. No. 37-3, ¶ 1.)  Thus, Ms. Berman has not fulfilled her burden to demonstrate the reasonableness of her rate, which falls at the high end of rates generally awarded to partners by courts in this district.  See Aiello, 2005 WL 1397202, at *7 (citing Blum, 465 U.S. at 896 n. 11) ("the burden is on the fee applicant to produce satisfactory evidence . . . that the requested [hourly] rates are in line with those prevailing in the community for similar services *by lawyers of reasonably comparable skill, experience, and reputation*.") (emphasis added).  Accordingly, the Court finds it appropriate to reduce Ms. Berman's hourly rate from $390.00 to $300.00.  See id.; General Electric Co. v. Compagnie Euralair, S.A., 1997 WL 397627, at *5 (S.D.N.Y. July 3, 1997) (reducing fee request where the plaintiff's counsel did not provide the court with adequate information as to counsel's experience level or why billing rate was reasonable).

Multiplying the hourly rate of $300 by 31.10 hours results in a total of $9,330.00.  Giving plaintiff's counsel consideration for the difficulties she encountered in obtaining plaintiff's compliance, both as the result of plaintiff's documented condition and counsel's own undocumented

complications, the Court, in its discretion, discounts the amount

of fees by 50% for a total sanctions award of $4,665.00.

## CONCLUSION

Based on the foregoing, plaintiff's counsel, and not plaintiff, is directed to pay Euro Brokers $4,665.00 within twenty-one days of the date of this Opinion and Order, or April 20, 2006. Any objections to this Opinion and Order should be filed with the Judge Sifton. Failure to object within ten days of the date of entry of this order will preclude appellate review by the District Court. Local Civil Rule 6.3; Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992), cert. denied, 506 U.S. 1038 (1992); Small v. Secretary of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); see also Fed. R. Civ. P. 72(a) ("Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made."). Any requests for extensions of time to file objections should be made to Judge Sifton.

**SO ORDERED.**

Dated:      March 30, 2006
            Brooklyn, New York

                                    _____/s/_____
                                    **Kiyo A. Matsumoto**
                                    United States Magistrate Judge
                                    Eastern District of New York