UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Maritza Burgie,

                        Plaintiff,

      - against -

Euro Brokers, Inc. and First Unum Life
Insurance Company,

                      Defendants.

----------------------------------------X

CV-05-0968
(CPS)

MEMORANDUM
OPINION AND
ORDER

SIFTON, Senior Judge.

    On February 18, 2005 plaintiff Maritza Burgie commenced this action against defendants Euro Brokers, Inc. ("Euro Brokers") and First Unum Life Insurance Company ("Unum") alleging that Euro Brokers terminated her employment in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2617(a),[1] the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12101*, et seq.* and that Unum failed to process forms and materials submitted by plaintiff, denied her benefits under her disability policy and terminated her policy in violation of ERISA, the ADA and in breach of its contract with her. Now before this Court are defendant Unum's (1) motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

---

[1] The FMLA claim was not pled against Unum and, accordingly, is not at issue on the motion by Unum discussed herein.

plaintiff's breach of contract and ADA claims and (2) its motion
for summary judgment on all claims alleged against it pursuant to
Rule 56 of the Federal Rules of Civil Procedure.  For the reasons
set forth below, defendant Unum's motions are granted, with leave
to the plaintiff to amend her ADA claim.

## BACKGROUND

The following facts are drawn from plaintiff's Second
Amended Complaint, and the submissions of plaintiff and defendant
Unum in connection with these motions.  In connection with the
motion to dismiss, the plaintiff's allegations in her Complaint
are taken as true and every reasonable inference drawn in her
favor.  As relates to the motion for summary judgement, disputes
are noted.

In September 2001 plaintiff was one of more than 500
employees of defendant Euro Brokers, had worked for Euro Brokers
for more than twelve years as a Benefits Specialist in the Human
Resources Department and qualified as a participant in Euro
Brokers' long term disability plan.

On September 11, 2001 plaintiff was on her way to work in
the Euro Brokers office located in Tower Two of the World Trade
Center when the Tower was attacked by terrorists.  She observed
her co-workers enter elevators to ascend to their office in an
elevator.  She was thereafter propelled from the building by the

initial explosion.  She observed another woman crushed to death by debris.  A subsequent explosion propelled the plaintiff to the floor of a subway terminal.  A Good Samaritan thereafter carried her to her husband's place of business.

Plaintiff alleges in her Complaint that she suffered both mental and physical injuries in the attacks and, with the consent of her employer, took time off to recover.  Defendant denies that she suffered from physical, as opposed to mental, injuries. During her leave, plaintiff and her husband informed her employer of her condition, whereabouts, and her intention to return to work.  Thereafter, in November 2001, according to the plaintiff, her supervisors insisted that she return to work before she was medically able to do so.

On her return, Euro Brokers placed plaintiff, along with other employees, in an office overlooking barges carrying debris from the World Trade Center site.  Plaintiff claims that her request for another location or "reasonable accomodation" of her disability was improperly denied by Euro Brokers, despite its accomodation of other employees by allowing them to work at home.

On the weekend following Thanksgiving of 2001, plaintiff suffered a nervous breakdown from the stress of the attacks and her return to work.  She sought medical treatment and was diagnosed as suffering from "anxiety, post traumatic stress disorder and other sequelae."

On November 23, 2001, plaintiff began an extended medical leave.  According to plaintiff, she requested the leave under FMLA, 29 U.S.C. §2601, *et seq.*, together with disability benefits.  In response to Euro Brokers' request she provided a certification from her private physician in support of her request for medical leave.  The certification stated that plaintiff's serious health condition commenced on September 11, 2001, that the probable duration was unknown, and that medical leave was appropriate since plaintiff was unable to perform the functions of her job.

On February 25, 2002, Human Resources Director Eileen McMahon sent a letter to plaintiff stating that she would be deemed terminated because she did not return calls, contact the office or advise of her projected return date.  Plaintiff states that plaintiff, her husband and her physician maintained continuous contact with Euro Brokers and advised it of her intention to return to work.

On March 7, 2002 plaintiff was terminated in a letter signed by Roger E. Schwed, the Executive Vice President and General Counsel of Euro Brokers, delivered to her by Fed Ex.

In September 2002 plaintiff filed a claim with defendant Unum for disability benefits.  In order to process the claim Unum requested certain paperwork from Euro Brokers which Euro Brokers did not supply.  After informing plaintiff on October 11, 2002

that her claim could not be processed without the employer
paperwork, and receiving no response from her or her employer,
Unum informed plaintiff on October 22, 2002 that it was closing
her claim and that she had thirty days to ask that it be
reopened.  Plaintiff did not respond and Unum closed the claim
without rendering a decision on the merits.  Plaintiff took no
further action with respect to her claim until she commenced this
litigation in February, 2005.

After this action was filed Unum obtained the employer
paperwork required, determined that plaintiff was entitled to
disability benefits for the period from November 27, 2001 to
September 17, 2002, and, on October 24, 2005, paid her $1,801.56,
the amount it deemed owed to her under the plan.  Unum advised
plaintiff that it would consider her eligibility for additional
benefits after September 17, 2002 if she submitted medical
records concerning that period.  Thereafter, Unum obtained
records from plaintiff's therapist for the post September 11
period, determined that plaintiff was eligible to receive
additional benefits, and paid her $4,588.20 on March 9, 2006.
According to Unum, this is the maximum amount plaintiff may
recover under the plan because of the nature of her disability.

Unum originally filed its motion to dismiss on December 28,
2005 and this Court heard argument on April 18, 2006.  At that
time, decision was reserved on the motion to dismiss the breach

of contract and ADA claims. The motion to dismiss plaintiff's ERISA claims was converted to a motion for summary judgment[2] with regards to the question of whether the plaintiff has been paid the maximum benefits to which she is entitled under the plan. The parties were given until May 31, 2006 to conduct further discovery and submit any additional material pertinent to that aspect of the motions.[3]

## DISCUSSION

### I. Motion to Dismiss - ADA Claim

Unum styles its motion as one to dismiss all claims under Federal Rule of Civil Procedure 12(b)(1) which relates to

---

[2] *See* Rule 12, which says, in relevant part:

> If, on a motion asserting the defense . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(b). *See also In re European Rail Pass Antitrust Litigation,* 166 F.Supp.2d 836, 844 (S.D.N.Y. 2001) (although a court may convert a motion to dismiss to a motion for summary judgment informally, it is generally more appropriate to formally notify the parties of the conversion where the parties have not yet completed discovery or requested the conversion)

[3] Plaintiff now requests that "the Court provide her with notice if it is to treat this motion as a F. R. Civ. P. 56 [sic] motion so that she may be include such additional affidavits and documentation as may be necessary." However, at oral argument on April 18, 2006, the Court stated: "I am going to formally convert this Rule 12 motion into a motion for summary judgement on the issue of whether the plaintiff has received all of the benefits to which she is entitled." Transcript of Oral Argument at 6, *Burgie v. Euro Brokers, et al.,* CV-05-0968 (E.D.N.Y argued April 18, 2006). In response to plaintiff's request on April 18 for "permission to proceed with some discovery," the Court granted her leave to do so. *Id.* at 7.

dismissal of a claim for lack of subject matter jurisdiction.
However, defendant's arguments, to the extent they raise non-
jurisdictional issues, are more properly addressed under Federal
Rule of Civil Procedure 12(b)(6) which requires dismissal of
claims which fail to state a cause of action. *See Schoon v.
Massanari,* 2001 WL 1641241, at *2 (S.D.N.Y. 2001) (no prejudice
when converting a 12(b)(1) motion to a 12(b)(6) motion where
opposing party is explicitly aware of moving party's argument).

In considering a motion pursuant to Rule 12(b)(6), a court
should construe the complaint liberally, "accepting all factual
allegations in the complaint as true, and drawing all reasonable
inferences in the plaintiff's favor," *Chambers v. Time Warner,
Inc.,* 282 F.3d 147, 152 (2d Cir. 2002)(citing *Gregory v. Daly*,
243 F.3d 687, 691 (2d Cir. 2001)), although "mere conclusions of
law or unwarranted deductions" need not be accepted. *First
Nationwide Bank v. Helt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.
1994). "The issue is not whether a plaintiff will ultimately
prevail but whether the claimant is entitled to offer evidence to
support the claims." *Villager Pond, Inc. V. Town of Darien*, 56
F.3d 375,378 (2d Cir. 1995). Dismissal is appropriate only when
it "appears beyond a doubt that the plaintiff can prove no set of
facts which would entitle him or her to relief." *Sweet v.
Sheahan*, 235 F.3d 80,83 (2d Cir. 2000). Additionally, a
complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) if

the Court finds that the plaintiff's claims are barred as a matter of law. *Conopco, Inc. v. Roll Intern.,* 231 F.3d 82, 86 (2d Cir. 2000).

Plaintiff alleges in Count One that Unum violated the ADA when it "fail[ed] to process the forms and materials submitted by Plaintiff, failed to procure the Employer's Statement and all applicable forms and information from EBI and then terminated her under its policy without justification."[4]  In its motion papers, Unum provides two reasons why this ADA claim should be dismissed: (1) that Unum is protected by the "safe harbor" provisions of the ADA and (2) that Unum is not plaintiff's "employer" as required for a claim under the ADA.

Under the "safe harbor" provision of 42 U.S.C. § 12201(c),[5]

---

[4] Plaintiff's filings in connection with this motion allege for the first time alleges that "if the facts in this case are found to support plaintiff's theory that Unum conspired with her employer to deprive her of benefits, a cause of action may lie against Unum as an aider and abettor in an ADA claim against it."  Since the Complaint nowhere alleges that Unum "aided and abetted" Euro Brokers in violating the ADA, such a claim is not before me at this time. *See Falchenberg v. New York City Dept. Of Educ.,* 457 F.Supp.2d 490, 494 (S.D.N.Y. 2006) ("Neither the Supreme Court nor the Second Circuit has addressed the issue [as to whether the ADA provides for liability under an aiding and abetting theory] directly").

[5] In relevant part, the statute reads:

(c) Insurance
Subchapters I through III of this chapter and title IV of this Act shall not be construed to prohibit or restrict--
(1) an insurer, hospital or medical service company, health maintenance organization, or any agent, or entity that administers benefit plans, or similar organizations from underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law; or
(2) a person or organization covered by this chapter from establishing, sponsoring, observing or administering the terms of a bona fide benefit plan that are based on underwriting risks, classifying risks, or administering such risks that are based on

claims against insurers are "exempt from regulation under the ADA

so long as (i) their actions conform to state law, and (ii) they

do not use the exemption as a 'subterfuge to evade the purposes

of the Act.'" *Leonard F. v. Israel Discount Bank of New York,* 199

F.3d 99, 103 (2d Cir. 1999) (quoting 42 U.S.C. § 12201(c)).[6]

However, as the court in *Leonard F*. points out, at very least the

question of whether Unum was using the exemption as "subterfuge"

is a factual question which cannot be decided on a motion to

dismiss but rather must be raised in a motion for summary

---

> or not inconsistent with State law; or
> (3) a person or organization covered by this chapter from
> establishing, sponsoring, observing or administering the terms of
> a bona fide benefit plan that is not subject to State laws that
> regulate insurance.

42 U.S.C. § 12201(c).

[6] Plaintiff argues that Unum's "safe harbor" defense is waived since it was not included as an affirmative defense in Unum's Answer to the initial Complaint, which was filed prior to the filing of the motion to dismiss. However, courts frequently allow a defense to be raised for the first time in a filing subsequent to the answer where it would not prejudice the plaintiff. *See Devito v. Pension Plan of Local 819 I.B.T. Pension Fund*, 975 F.Supp. 258, 263 (S.D.N.Y.1997) ("numerous courts have held that absent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time") (abrogated on other grounds); *Steinberg v. Columbia Pictures Industries, Inc.*, 663 F.Supp. 706, 715 (S.D.N.Y.1987) ("Absent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time") (internal quotations and citations omitted); *Astor Holdings, Inc. v. Roski*, 325 F.Supp.2d 251, 260-261 (S.D.N.Y. 2003) ("a district court may consider the merits of an affirmative defense - even one explicitly listed as such in Fed R. Civ. P. 8(c) - raised for the first time at the summary judgment stage, so long as the plaintiff has had an opportunity to respond").  In this case, the motion to dismiss was filed originally on December 28, 2005 and plaintiff's initial response papers were not submitted until April 10, 2006.  In addition, plaintiff filed an amended Complaint that same month.  Considering the amount of time plaintiff had to respond, and the fact that she amended her Complaint long after receiving notice of Unum's motion, she suffers no prejudice, nor is there any indication of bad faith on Unum's part. *See Block v. First Blood Associates,* 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith").  Accordingly, Unum's "safe harbor" defense is not deemed waived.

judgment.[7]  Since the motion to dismiss on this ground is not one

raising issues outside the pleading it should not be converted

*sua sponte* to a motion for summary judgment.[8]

As to Unum's argument that it is not plaintiff's "employer,"

neither plaintiff, in her Complaint,[9] nor Unum, in its motion,

state under which of three different subsections of the ADA

plaintiff sues: (1) Title I, 42 U.S.C. §§ 12111 - 12117, which

deals with private employment; (2) Title II, 42 U.S.C. §§ 12131 -

12165, which deals with public services; or (3) Title III, 42

U.S.C. §§ 12181 - 12189, which deals with public accommodations

and services provided by private entities.  Appropriate defenses

depend on which Title has allegedly been violated.  In the

present case, plaintiff may be making her claim under Title I or

---

[7] In *Leonard F.*, the court held that the question as to whether the actions of the insurer conformed to state law is one of law, not fact, which may be decided on a motion to dismiss. 199 F.3d 99 at 107.  However, in the present filings neither party has provided the court with any legal support for the notion that Unum's policies either do or do not conform with state law.

[8] Unum does not argue, and accordingly I do not decide, whether plaintiff has sufficiently met the pleading requirements for "safe harbor" cases under *Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28, 36 (2d Cir. 1999) ("plaintiff has . . . obligation to plead . . . that the insurance practice complained of is not consistent with state law or is being used as a 'subterfuge to evade the purposes'") or whether the Supreme Court's holding in *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) alters the holding in *Pallozzi* (complaint must only give "defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").

[9] The only reference to the statute itself in plaintiff's Complaint is in the section on jurisdiction, where she states that she brings the claim under "42 U.S.C. §§ 12101 et seq.," but fails to indicate which Title the claim is brought under.

Title III,[10] while Unum's defense that it is not plaintiff's

"employer" is only relevant under Title I, which prohibits

discrimination by a "covered entity," 42 U.S.C. § 12112(a),

defined to include an "employer" in 42 U.S.C. § 12111(2).  Since

claims (and defenses) under Title I and Title III are distinct, I

cannot determine the applicability of Unum's "employer" defense

without greater clarity by the plaintiff as to nature of her

claim.[11]  Accordingly, the ADA claim must be dismissed, with

leave to amend within thirty days to clarify which Title of the

---

[10] *See Pallozzi,* 198 F.3d at 32 (Title III applies to insurance underwriting).

[11] In the interest of avoiding further delays, I note that courts have frequently found that the question of whether or not someone is an "employer" is a question of fact better determined on summary judgement than on a motion to dismiss.  In *Carparts Distrib. Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.,* 37 F.3d 12, (1st Cir. 1994) ("*Carparts*").  The court denied a motion to dismiss on the grounds that a "self-funded medical reimbursement plan" may be considered an employer under the ADA in the following circumstances: (1) if "it exercised control over an important aspect of [plaintiff's] employment," such as a situation where the insurer had authority to determine the level of benefits provided; (2) if it were an "agent" of the covered entity "who act[s] on behalf of the entity in the matter of providing and administering employee health benefits; or (3) if the factual circumstances warrant the application of the ADA to an entity who is not technically plaintiff's employer. *Carparts,* 37 F.3d at 17-18.  Whether or not defendants are to be considered "employers" involves a factual determination as to whether "they are so intertwined with those [covered] entities that they must be deemed an 'employer' for purposes of Title I of the ADA." *Id.* at 17. *See Hollander v. Paul Revere Life Ins. Co.,* 1997 WL 811531, at *1 (S.D.N.Y. 1997) (citing *Carparts* and noting that "it is unclear at this point whether defendant is 'so intertwined' with plaintiff's employer, . . . that it should be deemed an 'employer' or 'covered entity'"); *Bloom v. Bexar County*, 130 F.3d 722, 725 n.2 (5th Cir. 1997) (questioning the rationale of *Carparts* but acknowledging that there is still a factual question to be addressed); *but see Weyer v. Twentieth Century Fox Film Corp.,* 198 F.3d 1104, 1113 n.48 (9th Cir. 2000) (holding that even under the "questionable" rationale of *Carparts*, an insurer would not be considered an employer).  The case cited by Unum, *Taylor v. MCI, Intern.*, 215 F.Supp.2d 347 (S.D.N.Y. 2002), is not to the contrary. In *Taylor,* the court refers to an earlier proceeding in which the court found that "UNUM could not be sued under the ADA . . . because UNUM was not plaintiff's employer." *Id.* at 351.  However, that case was also decided on summary judgment.

ADA plaintiff alleges Unum violated. *See Harris v. Radioshack Corp.,* 2002 WL 1907569, at *2 (S.D.Fla. 2002) ("If Plaintiff desires to assert discrimination claims under various theories, these claims must be asserted in separate counts in accordance with Fed.R.Civ.P. 10(b)"); *Gonzalez v. Police Com'r Bratton,* 2000 WL 1191558, at *20 (S.D.N.Y. 2000) (finding the "conceptually" distinct claims which "require[] different pleading and proof" must be alleged in separate counts).

## II. Breach of Contract Claim

Although neither party directly addresses the issue of ERISA preemption of the state contract law claim against Unum, I raise it here *sua sponte*. *See Carabillo v. ULLICO, Inc.,* 357 F.Supp.2d 249, 259 n.7 (D.D.C. 2004) (court can review ERISA preemption of state law claims *sua sponte*); *Bernal v. Randall's Food & Drugs, Inc.*, 1998 WL 246640, at *3 (N.D.Tex. 1998) ("Although neither party addressed the issue of federal law preemption, the Court must *sua sponte* raise the issue in light of the combined state and ERISA federal claims included in the Plaintiff's complaint").

Plaintiff's Complaint alleges that Unum breached its contract with her when it denied her benefits under the plan. However, to ensure that pension plan regulation remained an "exclusively federal concern," Congress included a broad preemption clause in ERISA. *Smith v. Dunham-Bush, Inc.,* 959 F.2d

6, 8 (2d Cir. 1992). Under the law in this Circuit, a state law breach of contract claim is preempted by ERISA § 502(a)(1)(B) which enables a beneficiary to bring a claim to recover benefits due under an ERISA plan. *Morlino v. Staten Island University Hosp.*, 173 F.3d 845, 1999 WL 197213, at *2 (2nd Cir. 1999); *Harrison v. Metropolitan Life Ins. Co.*, 2006 WL 521571, at *6 (S.D.N.Y. 2006). However, where a complaint characterizes a claim as a common law breach of contract, but sets forth the elements of a claim under ERISA § 502(a)(1), the court's proper course is to recharacterize the claim as a claim under ERISA § 502(a)(1)(B) rather than to dismiss the complaint under the preemption doctrine. *Harrison v. Metropolitan Life Ins. Co.*, 2006 WL 521571, at *6 (S.D.N.Y. 2006); *Arthurs v. Metropolitan Life Ins. Co.*, 760 F.Supp. 1095, 1098 (S.D.N.Y. 1991). Accordingly, plaintiff's breach of contract claim is construed as brought under ERISA § 502(a)(1)(B), and addressed below in connection with the motion for summary judgment on her other ERISA claims.

III. Summary Judgment - ERISA Claim

*Summary Judgment*

Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Rule 56 of the Federal

Rules of Civil Procedure provides for summary judgment "if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to judgment as matter of law."  Fed.
R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S.
317, 322 (1986).  "An issue of fact is genuine if the evidence is
such that a reasonable jury could return a verdict for the
nonmoving party."  *Elec. Inspectors, Inc. v. Vill. of E. Hills*,
320 F.3d 110, 117 (2d Cir. 2003).  A fact is material when it
"might affect the outcome of the suit under the governing law."
*Id.*

The party seeking summary judgment has the burden of
demonstrating that no genuine issue of material fact exists.
*Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987).  In
order to defeat such a motion, the non-moving party must raise a
genuine issue of material fact.  Although all facts and
inferences therefrom are to be construed in the light most
favorable to the non-moving party, the non-moving party must
raise more than a "metaphysical doubt" as to the material facts.
*See Matsushita*, 475 U.S. at 586; *Harlen Assoc. v. Vill. of
Mineola*, 273 F.3d 494, 498 (2d Cir. 2001).  "[A]n adverse party
may not rest upon the mere allegations or denials of the adverse
party's pleading, but . . . must set forth specific facts showing

that there is a genuine issue for trial." Fed. R. Civ. P 56(e).
The non-moving party may not rely on conclusory allegations or
unsubstantiated speculation. *Twin Labs., Inc., v. Weider Health &
Fitness*, 900 F.2d 566, 568 (2d Cir. 1990); *Kulak v. City of New
York*, 88 F.3d 63, 71 (2d Cir. 1996) ("conclusory statements,
conjecture, or speculation by the party resisting the motion will
not defeat summary judgment"); *Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 251 (1986); *Niagara Mohawk Power Corp. v. Jones
Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003).

The trial court's function in deciding such a motion is not
to weigh the evidence or resolve issues of fact, but to decide
instead whether, after resolving all ambiguities and drawing all
inferences in favor of the non-moving party, there is a genuine
issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
249 (1986); *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d
Cir. 2000). If there is evidence in the record as to any
material fact from which an inference could be drawn in favor of
the non-movant, summary judgment is unavailable. *Holt v.
KMI-Continental, Inc.*, 95 F.3d 123, 128 (2d Cir. 1996); *Rattner
v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).

*Calculation of Benefits Paid*

The parties agree that Unum has paid the plaintiff
$6,389.76. The question remains whether this amount constituts

the entire amount plaintiff was due under the policy. Unum has submitted an affidavit from Kevin Carder, a Disability Benefits Specialist with Unum who worked on plaintiff's claim. The affidavit explains how the amounts were calculated and verifies the authenticity of the claim file previously filed in this action[12] based on Carder's knowledge of Unum's record-keeping practices and his work on plaintiff's claim.[13]

According to the Carder affidavit, under plaintiff's policy, the following process was used to calculate payments: (1) multiply monthly earnings by 60%; (2) cap the "maximum monthly benefit" at $20,000; (3) compare the figure calculated in step

_____

[12] That file contains a copy of the insurance policy, as well as documents related to the processing of the 2002 claim, including doctor's notes and the letters Unum sent to plaintiff regarding the missing documentation. Plaintiff questions the authenticity of the policy but has offered no evidence that it is not authentic although given an opportunity for discovery.

[13] Plaintiff notes in passing, without elaboration, that Carder's identity was not revealed in any previous Rule 26 disclosure. See Fed. R. Civ. P. 26(a) (parties required to disclosure identity of "individual likely to have discoverable information that the disclosing party may use to support its claims or defenses"). However, Carder's significance as a witness did not arise until the April 18, 2006 hearing when the Court ordered Unum to provide information regarding the method used to calculate benefits, which Unum did by submitting this affidavit on May 17, 2006. Moreover, plaintiff was explicitly granted an opportunity to seek additional discovery. See Johnson Elec. North America Inc. v. Mabuchi Motor America Corp., 77 F.Supp.2d 446, 458 (S.D.N.Y. 1999) (proper remedy for violation of Rule 26 is allowing counsel additional time to depose a witness, not preclusion); McNerney v. Archer Daniels Midland Co., 164 F.R.D. 584, 587 (W.D.N.Y. 1995) ("prejudice to defendant can be remedied by granting leave to defendant to depose the" witness). Today, over four months since Carder's affidavit was provided to the plaintiff, any prejudice is solely the fault of the plaintiff. See Atkins v. County of Orange, 372 F.Supp.2d 377, 397 (S.D.N.Y.,2005) (where defendants had over a year to object to evidence filed in violation of Rule 26, "any prejudice is a result of their tactical decision to wait until a few months before trial to seek preclusion"); Allenbrand v. Louisville Ladder Group, LLC , 2006 WL 2663529, at *5 ((D.Kan. 2006) (failure to submit expert testimony deemed harmless when there remained five months before the trial to cure the problem).

(1) with the "maximum monthly benefit" and select the lower of the figures as the "gross disability payment"; (4) multiply monthly earnings by 70% and subtract deductible sources of income; (5) compare the figure calculated in step (4) with the "gross disability payment" from step (3) and select the lower of the figures as the monthly payment entitled under the plan.

According to the Carder Affidavit, in step (1), Unum calculated plaintiff's monthly pre-disability earnings, based on payroll records and W-2s, as $4,437.39. After multiplying by 60%, the result came to $2,662.43 per month. Since the $20,000 maximum monthly benefit cap was not reached, $2,662.43 became the "gross disability payment" in step (3). In step (4), based on records provided by Euro Brokers and the plaintiff, and the provisions of the insurance policy, Unum deducted $1,733.33 per month in workers compensation benefits and $1,520 per month in social security disability benefits plaintiff received, for a total of $3,253.33 per month in deductible sources of income. Subtracting that from 70% of the monthly income ($3,106.17), Unum calculated -$147.16 in step (4). Since this amount was less than the "gross disability payment," -$147.16 was the monthly benefit under step (5).

When the amount calculated in step (5) is a negative number, the plan provides for a monthly benefit of the greater of $100 or 10% of the "gross disability payment." In this case, 10% of the gross disability payment comes to $266.24 per month. The

affidavit goes on to note that twenty-four months is the maximum amount of time for which benefits will be paid for a mental disability like the one suffered by the plaintiff.[14]

In 2005, sufficient proof was initially supplied to qualify plaintiff for benefits from February 25, 2002 until September 17, 2002.  Additional proof was later supplied sufficient to qualify her for benefits for the balance of the twenty-four month period. Pursuant to plaintiff's valid claims, Unum paid her $1,801.56 on October 24, 2005 and $4,588.20 on March 9, 2006, for a total of $6,389.76.

In papers filed in connection with this motion and at oral argument, plaintiff has alleged several reasons why this amount does not properly represent the total amount she is owed under her policy.

Plaintiff challenges the accuracy of the documents contained in the claim file, questioning whether the records provided are "complete, have been created after the fact, tampered with, or are accurate."  At oral argument, plaintiff's counsel further claimed that "they haven't given us all the documents that make up the plan." Transcript of Oral Argument at 8, *Burgie v. Euro Brokers, et al.*, CV-05-0968 (E.D.N.Y argued Nov. 7, 2006).  This assertion is contradicted by the Carder affidavit, which confirms the "accuracy and completeness" of the claim file pertaining to

---

[14] The plan limits benefits to twenty-four months for "[d]isabilities due to mental illness." Carder Aff., Ex. A, p. LTD-BEN-8.

plaintiff's application for benefits on the basis of his knowledge of Unum's record-keeping practices and his work on the plaintiff's claim. Despite being allowed over four months to seek discovery, plaintiff offers no evidence which would indicate that the claim file is inaccurate or incomplete, that the policy applied by Carder in resolving plaintiff's claim in 2005 is anything other than it appears to be, or that Carder is lying.

Plaintiff also argues that the Carder affidavit is "suspect" since there has been no affidavit from Ann Berthiaume, an Intake Specialist whose name can be found on documents related to plaintiff's case file, such as the letters mailed to plaintiff. At oral argument, plaintiff's counsel further said, in reference to Ms. Berthiaume, that Unum had "not submitted anything to me from people that I would expect to have received it from." Transcript of Oral Argument at 4, *Burgie v. Euro Brokers, et al.*, CV-05-0968 (E.D.N.Y argued Nov. 7, 2006). However, plaintiff has made no effort to depose or otherwise obtain any discovery related to Ms. Berthiaume, and the mere fact that Unum did not seek an affidavit from her is hardly evidence that anything untoward occurred during the processing of plaintiff's claim, viewed in light of the Carder affidavit. *See Torres v. Selsky,* 2005 WL 948816, at *5 (N.D.N.Y. 2005) (lack of affidavits from all those involved does not preclude entry of summary judgment where movant's submissions are otherwise sufficient).

Plaintiff further states that the calculations are incorrect

and that the amounts calculated by Unum were an "incorrect interpretation of the plan." Transcript of Oral Argument at 4, *Burgie v. Euro Brokers, et al.*, CV-05-0968 (E.D.N.Y argued Nov. 7, 2006). Specifically, in her papers, plaintiff states that the "SSD [Social Security Disability] paid is not a deductible source of her income and is improperly in Carder's equations." However, the process of calculating benefits followed by Unum, as described above, is exactly that laid out in the policy, which has been validated by Carder's affidavit as the one applicable to plaintiff's claim. *See* Carder Aff., Ex. A, p. LTD-BEN-2. Further, the policy explicitly says that "Unum will subtract from your gross disability payment the following deductible sources of income" and goes on to include "[t]he amount you, your spouse and your children receive as disability payments because of your disability under: the United States Social Security Act." Carder Aff., Ex. A, p. LTD-BEN-5.

Finally, plaintiff claims that she is entitled to more than two years of disability benefits. Under the plaintiff's policy, benefits are available for disabilities which prevent claimant from "performing the material and substantial duties of [her] regular occupation." Carder Aff., Ex. A, p. LTD-BEN-1. While the maximum benefits vary depending on the age of the claimant, the plan states that "[d]isabilities due to mental illness have a limited pay period up to 24 months." Carder Aff., Ex. A, p. LTD-BEN-8. Plaintiff alleges that her injury was not merely mental

but physical as well and supports that argument by stating, without providing any documentation, that the Social Security Administration has already "adjudicated her disabled physically and mentally due to the unique nature of the 9/11 injuries she sustained which defy categorization."

Where the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility for benefits or to construe the terms of a plan, a court confronted with such a claim should "not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious."' *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995); *Kinstler v. First Reliance Standard Life Ins. Co.,* 181 F.3d 243, 249 (2d Cir. 1999).[15]  Plaintiff's policy, by its terms, reserves for Unum "discretionary authority to determine . . . eligibility for benefits and to interpret the terms and provisions of the policy." Carder Aff., Ex. A, p. CC.FP-1.  The undersigned, as well as other courts in this Circuit, have held that this language is "more than sufficient to vest discretionary authority in Unum." *Greenberg v. Unum Life Ins. Co. of America,*

_____

[15] The arbitrary and capricious standard of review is narrow, and a court should not disturb the administrator's decision unless "it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan,* 52 F.3d at 442. Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached." *Celardo v. GYN Auto. Dealers Health & Welfare Trust.*, 318 F.3d 142, 146 (2d Cir. 2003).  Thus, the decision will be upheld so long as it "falls somewhere on a continuum of reasonableness - even if on the low end." *Davis v. Commercial Bank of N.Y.*, 275 F.Supp.2d 418, 425 (S.D.N.Y. 2003).  Review under this standard is based on the record before the administrator at the time of decision. *Risk v. Log Term Disability Plan of the Dun & Bradstreet Corp.*, 862 F.Supp. 783, 791 (E.D.N.Y. 1994).

2006 WL 842395, at *6 (E.D.N.Y. 2006); *see also Snyder v. First Unum Life Ins. Co.,* 144 Fed.Appx. 134, 136 (2d Cir. 2005). Accordingly, the arbitrary and capricious standard of review is appropriate here.

Unum notes that the record includes a 2002 letter from Dr. Howard Issacs, who was providing plaintiff "psychiatric medication management," stating that plaintiff suffered from Major Depressive Disorder and Post-Traumatic Stress Disorder and describing her as displaying "depressive and anxiety symptoms." Begos Aff., Ex. B, p. FULCL 26. Unum also notes another 2002 letter from plaintiff's treating psychologist, Dr. Maureen Kaley, which confirms that plaintiff was being treated for Major Depression and Post-Traumatic Stress Disorder and describes symptoms including memory loss, confusion, fear and suicidal thoughts; Dr. Kaley recommended continued psychotherapy and medication. Begos Aff., Ex. B, p. FULCL 24-25. Both depression and post-traumatic stress disorder are classified as mental illnesses by the American Psychiatric Association and a determination by Unum consistent with such a finding cannot be deemed arbitrary and capricious. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION 339, 424 (American Psychiatric Association ed., 1994) ("DSM-IV"); *see Bergquist v. Aetna U.S. Healthcare,* 289 F.Supp.2d 400, 410 (S.D.N.Y. 2003) (finding that classifying post-traumatic stress syndrome as a mental disorder was not arbitrary and capricious, since it is recognized in the

DSM-IV, a diagnostic manual for analysis and description of mental diseases); *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) (noting that the American Psychiatric Association characterizes depression as a mental disorder).[16]

Accordingly, the Court concludes that Unum has provided sufficient evidence showing that the claim file is complete and authentic, that it has performed proper calculations on plaintiff's claim under the terms of the plan, and that the amount it has paid already is equal to the amount due under the twenty-four month benefits period to which a beneficiary with a mental illness is entitled. Further, Unum's determination that Dr. Issacs' and Dr. Kaley's reports are consistent with mental illness is not arbitrary and capricious. Since plaintiff has responded to this evidence with nothing more than conclusory arguments and speculation,[17] despite being allowed an opportunity

---

[16] Even if the Social Security Administration has made a finding of physical disability in plaintiff's case, that finding would not be binding on Unum. *See Couture v. UNUM Provident Corp.*, 315 F.Supp.2d 418, 426 n.1 (S.D.N.Y. 2004) (since the Social Security Administration is bound by its own particular set of rules, "SSA decisions are not binding on ERISA plans").

[17] While plaintiff's assertions may be sufficient to allow her to survive a motion to dismiss, where the court must construe all plaintiff's factual allegations as true, they are insufficient in a motion for summary judgment. *See Vantage Point, Inc. v. Parker Brothers, Inc.*, 529 F.Supp. 1204, 1213-14 (E.D.N.Y. 1981) (summary judgment granted where it was "evident that [non-moving party] is opposing defendant's motion for summary judgment . . . entirely on the hope that a fact finder will disbelieve the persons who have submitted affidavits. This hope alone cannot defeat a properly supported motion for summary judgment . . . . If the most that can be hoped for is the discrediting of defendants' denials at trial no question of material fact is presented"); *Johnson v. Queens Admin. for Children's Services,* 2006 WL 229905, at *4 (E.D.N.Y. 2006)(mere assertion that moving party is lying, without evidence or affidavits, is a "conclusory allegation" insufficient to create a genuine issue of material fact)

to seek discovery, there exists no genuine issue as to these

questions and summary judgment is granted.[18]


IV. Other Claims

In filings with the Court and at oral argument, plaintiff

has indicated that she believes there may have been "a conspiracy

between First Unum and Euro Brokers, Inc. to 'lose' her claim"

and deny her benefits to which she was entitled.  However, while

plaintiff has alleged breach of contract, ERISA and ADA claims,

she has not alleged any such conspiracy by Unum in her Complaint

and has conceded as much by stating in a footnote of her papers

---

[18] To the extent plaintiff is arguing for any relief beyond the benefits
payable under the plan, she has failed to exhaust her administrative remedies
or explain why exhaustion would be futile, necessary preconditions for seeking
relief before a district court under ERISA. *See, e.g., Peterson v. Continental
Casualty Co.,* 282 F.3d 112, 117-18, 123 (2d Cir. 2002); *Kennedy v. Empire Blue
Cross and Blue Shield,* 989 F.2d 588, 593-94 (2d Cir. 1993); *Eastman Kodak Co.
v. STWB, Inc.,* 452 F.3d 215, 219 (2d Cir. 2006) *Barnett v. International Bus.
Mach. Corp.,* 885 F.Supp. 581, 586-87 (S.D.N.Y. 1995).
    The Second Circuit has recognized a "firmly established federal policy
favoring exhaustion of administrative remedies in ERISA cases." *Thomas v.
Verizon,* 2005 WL 3116752, at *1 (2nd Cir. 2005)(quoting *Kennedy v. Empire Blue
Cross & Blue Shield,* 989 F.2d 588, 594 (2d Cir. 1993)).  "[E]xhaustion in the
context of ERISA requires only those administrative appeals provided for in
the relevant plan or policy." *Thomas v. Verizon,* 2005 WL 3116752, *1 (2nd Cir.
2005)(citations omitted).  "If a plaintiff fails to allege that he or she has
exhausted administrative remedies, the claim must be dismissed." *Greifenberger
v. Hartford Life Ins. Co.,* 2003 WL 22990093, at *4 (S.D.N.Y. 2003).
    It is undisputed that plaintiff did not administratively appeal the
closing of her claim or her termination.  Failure to do so constitutes a
failure to exhaust her administrative remedies. *Greifenberger v. Hartford Life
Ins. Co.,* 131 Fed.Appx. 756, 758,(2d Cir. 2005)("this court requires the
exhaustion of administrative review procedures as a jurisdictional
prerequisite to any suit to recover ERISA benefits") (citing *Chapman v.
ChoiceCare Long Island Term Disability Plan,* 288 F.3d 506, 511 (2d Cir.
2002)).  The Unum plan lays out an appeals process under which plaintiff could
appeal an adverse decision by filing a written appeal within ninety days.
Begos Aff. Ex. A: ERISA-4.  If plaintiff believed that Unum had improperly
handled her claim she could have appealed the claim closing through this
process.  Because she did not do so, she has not shown that she has exhausted
her administrative remedies.

that she "[s]eeks leave to amend shortly to assert a conspiracy claim against First Unum and Euro Brokers, Inc. in more specific terms if permitted by the Court." *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512(2002) (complaint must at least "give the defendant fair notice of what the plaintiff's claim is"). Unless and until plaintiff seeks such leave and it is granted, the conspiracy claim is not before the Court.[19]

Finally, at oral argument, plaintiff also referred to the case of *Nicolaou v. Horizon Media, Inc.*, 402 F.3d 325 (2d Cir. 2005). That case discusses that retaliation protections afforded whistleblowers by Section 510 of ERISA. However, while plaintiff's Complaint does allege that Euro Brokers "retaliated against plaintiff for her refusal to violate E.R.I.S.A. [sic]" in violation of Section 510, nothing in the Complaint or papers submitted on this motion either alleges or provides any factual support for a claim that Unum itself also engaged in retaliatory behavior or conspired with Euro Brokers to engage in such behavior. Accordingly, there is no such claim properly before this court.

---

[19] The same is true for plaintiff's mention in her papers on these motions that "[s]he has a . . . fiduciary duty claim." Such a claim is nowhere referred to in the Complaint. Moreover, as with the breach of contract claims discussed above, fiduciary duty claims to recover individual relief for a denial of benefits are precluded by ERISA. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985) ("[e]xtracontractual damages not available to an individual under ERISA for breach of fiduciary duty"); *Borowski v. International Business Machines Corp.*, 1998 WL 777457, at *2 (2d Cir. 1998) ("when an ERISA fiduciary duty claim seeks to recover the same relief requested by a denial-of-benefits claim, the fiduciary duty claim is precluded").

**CONCLUSION**

For the reasons set forth above, defendant Unum's motion to dismiss the ADA and contract claims is granted with leave to amend the ADA claim and Unum's motion for summary judgment with respect to plaintiff's ERISA claim is granted.  The Clerk is directed to transmit a copy of the within to the parties and the Magistrate Judge.

SO ORDERED.

Dated :   Brooklyn, New York
          January 26, 2007


               By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge